IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| OLGA VAZQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:23-cv-662-ECM |
| ) | [WO] |
| IB&G OF MONTGOMERY, INC., d/b/a ) | |
| IXTAPA BAR & GRILL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In January 2022, Plaintiff Olga Vazquez's ("Vazquez") son was diagnosed with leukemia. For the next eight months, Vazquez's employer, IB&G of Montgomery, Inc. d/b/a Ixtapa Bar & Grill ("Ixtapa"), accommodated her schedule as she navigated her son's treatment. In September 2022, however, after Vazquez missed four weeks of work to care for her hospitalized son and informed Ixtapa that she would require further scheduling accommodations, Ixtapa terminated her. Vazquez alleges that, in doing so, Ixtapa violated the association discrimination provision of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(4). On July 12, 2024, Ixtapa filed a motion for judgment on the pleadings (doc. 21), which is now pending before the Court. The motion is fully briefed and ripe for review. For the reasons that follow, the motion is due to be GRANTED.

## II.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).  "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  "All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).  "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted).  But if "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law," judgment on the pleadings should be granted. *Id.*

## IV.  FACTUAL BACKGROUND

The facts alleged in Vazquez's complaint (doc. 1) are as follows:

2

In 2016, Vazquez was hired as a full-time waitress at Ixtapa, a Montgomery-area restaurant. (*Id.* at 3). From 2016 to 2022, she typically worked eleven-hour shifts, four days a week, for a total of forty-four working hours per week. (*Id.*). In January 2022, Vazquez's son was diagnosed with leukemia, which required regular medical treatment. (*Id.*). Shortly after learning of her son's diagnosis, Vazquez informed Ixtapa thereof and requested that it allow her to "change her work schedule to accommodate her son's medical appointments." (*Id.*). Ixtapa "told [Vazquez] that it would schedule her around [her son's medical] appointments to accommodate her." (*Id.*). Rather than working four days a week, as had been her practice, Vazquez reduced her workload to three days a week while her son received treatment. (*Id.* at 4).

In August 2022, Vazquez's son was hospitalized for four weeks, which prevented Vazquez from working at Ixtapa during that time. (*Id.*). "A week after [her son] got out of the hospital, Vazquez told [Ixtapa] that her child required chemotherapy three days a week." (*Id.*). "In response, [Ixtapa] told her to reschedule the chemotherapy appointments if it interfered with her work schedule." (*Id.*). In September 2022, after Vazquez informed Ixtapa of her inability to alter her schedule, Ixtapa terminated her. (*Id.* at 5). On August 24, 2023, the Equal Employment Opportunity Commission granted Vazquez the right to sue (doc. 1-1), and on November 14, 2023, she filed her complaint in this matter (doc. 1).

## V.  DISCUSSION

The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

3

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under § 12112(b)(4), the ADA defines "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." Absent direct evidence, a plaintiff can make out a prima facie case of association discrimination "using the familiar burden-shifting analysis employed in Title VII employment discrimination cases." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). To make out a prima facie case of association discrimination, a plaintiff must show: "(1) that she was subjected to an adverse employment action; (2) that she was qualified for the job at that time; (3) that her employer knew at that time that she had a relative with a disability; and (4) that the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in the employer's decision." *Id.* "Once a plaintiff establishes a prima facie case of discrimination, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action." *Id.* "If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254–55 (1981)).

Ixtapa concedes that Vazquez "has adequately pleaded the first three elements of the prima face case." (Doc. 21 at 5). The present dispute, therefore, centers around the fourth element: whether Vazquez's termination "occurred under circumstances which raised a reasonable inference that the disability of [Vazquez's son] was a determining factor in [Ixtapa's] decision" to terminate her. *See Wascura*, 257 F.3d at 1242. Accepting the facts alleged in Vazquez's complaint as true and viewing them in the light most favorable to her, the Court moves now to that analysis.

"In terms of explaining *how* to evaluate whether the disability of a relative was a determining factor, there is no published Eleventh Circuit decision defining what a 'determining factor' means." *Hertel v. Remington Lodging & Hosp., LLC,* 2020 WL 13664133, at *13 (N.D. Ga. Jan. 27, 2020) (emphasis in original).[1] Adopting the approach set forth by the Seventh Circuit, district courts within the Eleventh Circuit have concluded that an employee's association discrimination claim may succeed if it falls into one or more of these three categories: "'[1] expense, [2] disability by association, and [3] distraction.'" *Pennington v. Wal-Mart Stores East, LP*, 2014 WL 1259727, at *5 (N.D. Ala. Mar. 26, 2014) (citing *Larimer v. Int'l Bus. Mach. Corp.*, 370 F.3d 698, 700–01 (7th Cir. 2004)); *see also Rhodes v. Tuscaloosa Cnty. Bd. of Educ.*, 935 F. Supp. 2d 1226, 1250 (N.D. Ala. 2013); *Finch v. Morgan Stanley & Co. LLC*, 2017 WL 11500464, at *6 (S.D. Fla. May 8, 2017); *Gonzalez v. Wells Fargo Bank, N.A.,* 2013 WL 5435789, at *7 (S.D. Fla. Sept. 27,

---

[1] Here, and elsewhere throughout this Opinion, the Court cites nonbinding authority. While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

2013). Most relevant to this case is "distraction," or when "the employee is somewhat inattentive at work because [her] spouse or child has a disability that requires [her] attention, yet not so inattentive that to perform to [her] employer's satisfaction [she] would need an accommodation."[2] *Pennington*, 2014 WL 1259727, at *5. "The qualification concerning the need for an accommodation (that is, special consideration) is critical because the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person." *Id.* In other words, "federal law does not require employers to make reasonable accommodations for employees to care for their disabled relatives." *Id.* (citing *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 337 (7th Cir. 2012)). So, "even if [a] [p]laintiff's need to care for her [disabled relative] were the reason that she was absent or tardy, the ADA does not require [a] [d]efendant to accommodate that need." *Rocky v. Columbia Lawnwood Reg'l Med. Ctr.*, 54 F. Supp. 2d 1159, 1167 (S.D. Fla. 1999). An employer may elect to gratuitously accommodate a non-disabled employee with a disabled relative, but it is under no legal duty to continue so accommodating. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("[A]n employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so.").

---

[2] The "expense" category contemplates situations in which a disabled relative is on an employee's health plan, and the employee is terminated due to employer costs. *See Larimer*, 370 F.3d at 700–01. The "disability by association" category contemplates a narrow set of situations not alleged here. Such situations would include those, for example, in which either (a) an employee's companion is infected with HIV and the employer fears the employee may also become infected, or (b) an employee's blood relative has a disabling ailment that has a genetic component which increases the likelihood the employee will develop it. *See id.* The Complaint contains no allegations to either effect, and Vazquez does not pursue either theory in her brief.

Employers are prevented, however, from "mak[ing] decisions based on the belie[f] that the [employee] would have to miss work in order to take care of a disabled person." *Pittman v. Moseley, Warren, Prichard & Parrish*, 2002 WL 2007880, at *5 (M.D. Fla. July 29, 2002) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 214 (4th Cir. 1994)).[3] Stated another way, the ADA prohibits employers from "mak[ing] an unfounded assumption that [the employee] would have to miss work to take care of" her disabled relative. *Id.* (quoting *Tyndall*, 31 F.3d at 214). When an employee informs her employer that she will need additional time off from work to care for her disabled relative, the employer will not be found to have made an "unfounded assumption." In this scenario, it is clear that the employee will, in fact, have to miss work. *See Tyndall*, 31 F.3d at 214 ("[Defendant] did not make an unfounded assumption that [plaintiff] would have to miss work to take care of [her son]. Rather, [defendant] responded to [plaintiff's] record of extended absences in connection with [her son's] care and her actual statement that she would, in fact, have to miss additional work in order to be with her son.").

Vazquez argues that, from her complaint, the following inferences can be drawn:

> (1) before her child got sick, [Vazquez] only worked four-days a week; (2) [Ixtapa] initially agreed to accommodate [Vazquez's] need to care for her sick child; (3) she only needed to be off three-days a week and could work fo[u]r; (4) it was only after her child's hospitalization and her need to be off four weeks that matters changed; (5) then her request for a three-day a week accommodation, which still left four-days to work became a problem; (6) [Ixtapa] then asked her to schedule her son's chemotherapy around its needs; (7) when [Vazquez]

---

[3] In *Hilburn v. Murata Electronics North America, Inc.*, the Eleventh Circuit adopted the reasoning set forth by the Fourth Circuit in *Tyndall*. 181 F.3d 1220, 1231 (11th Cir. 1999).

>explained that she could not; (8) [Ixtapa] terminated her employment; and (9) then hired someone in her place."

(Doc. 27 at 6). Vazquez asserts that "[Ixtapa's] specific request that [Vazquez] adjust her child's chemotherapy appointments to its work schedule clearly raises a reasonable inference that her failure to do so, even though it had accommodated [her] need in the past, was a determining factor in its decision to terminate her employment." (*Id.*). Ixtapa responds that "even if the Court draws the reasonable inferences [Vazquez] desires, those inferences sound the death knell to [her] association discrimination claim," because federal law does not require employers to make reasonable accommodations for employees to care for their disabled relatives. (Doc. 28 at 4).

Applying the above caselaw, which the Court finds persuasive, to Vazquez's claim, the Court finds that she fails to adequately plead, under the ADA, that her association with her disabled son was a determining factor in her termination. *See Wascura*, 257 F.3d at 1242. Accepting Vazquez's factual allegations as true, Ixtapa gratuitously accommodated her scheduling needs as she dealt with her son's treatment. After eight months of discretionary accommodations, Vazquez informed Ixtapa that she would require additional scheduling accommodations to properly care for her son as he underwent treatment. And after learning of Vazquez's need for further accommodations, Ixtapa terminated her. Because the ADA "does not require employers to make reasonable accommodations for employees to care for their disabled relatives," Ixtapa did not violate the ADA when it refused to further accommodate Vazquez's scheduling needs. *See Pennington,* 2014 WL 1259727, at *5. The fact that Ixtapa had gratuitously accommodated Vazquez for eight

8

months and then declined to continue doing so does not change the Court's conclusion, because "an employer who goes beyond the demands of the law" to help an employee with a disabled relative "incurs no legal obligation to continue doing so." *See Lucas*, 257 F.3d at 1261.

Further, accepting Vazquez's factual allegations as true, Ixtapa did not terminate her on "an unfounded assumption that [she] would have to miss work to take of" her disabled son. *See Pittman,* 2002 WL 2007880, at *5 (citing *Tyndall,* 31 F.3d at 214). Instead, Vazquez told Ixtapa directly that "she needed to be off on the days her son was scheduled for chemotherapy." (Doc. 1 at 4–5). Thus, accepting the facts in the complaint as true, Ixtapa's decision to terminate Vazquez followed her direct representation that she would have to miss work in the future absent further accommodations for her son's medical appointments. This fact, coupled with the fact that Vazquez had just previously missed four weeks of work to tend to her son, shows that Ixtapa's decision followed an actual, communicated need to miss work, rather than after making an impermissible "unfounded assumption." *See Pittman*, 2002 WL 2007880, at *5. "[N]ot excusing [Vazquez's] association-related absences does not raise a reasonable inference that [Vazquez's] son's disabilities were a determining factor in [Ixtapa's] decision to fire her," and, accordingly, Vazquez fails to plead facts sufficient to make out the fourth element of her prima facie case.[4] *See Pennington*, 2014 WL 1259727, at *5. Thus, the Court determines that even if

---

[4] Because the Court has determined that Vazquez failed to make out a prima facie case, it pretermits discussion on the remainder of the burden-shifting framework articulated above.

9

all the facts alleged in Vazquez's complaint are true, she does not, as a matter of law, state a cognizable claim for relief under the ADA.

## VI.  CONCLUSION

The Court sympathizes with Vazquez and her situation.  She has undoubtedly faced numerous challenges in the wake of her son's diagnosis.  However, because the ADA does not require employers to accommodate employees who care for a disabled relative, she is not entitled to relief on her ADA claim.  Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendant's motion for judgment on the pleadings (doc. 21) is GRANTED, and this case is DISMISSED with prejudice.

A separate Final Judgment will be entered.

DONE this 11th day of December, 2024.

       /s/ Emily C. Marks  
EMILY C. MARKS  
CHIEF UNITED STATES DISTRICT JUDGE